IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HECTOR CHAMALE XIQUIN,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     3:26cv734 |
| | )     **Electronic Filing** |
| **LEONARD ODDO, MICHAEL ROSE,** | ) |
| **MARKWAYNE MULLIN,** | ) |
| **TODD BLANCHE,** | ) |
| | ) |
| Respondents. | ) |

## <u>OPINION</u>

Hector Chamale Xiquin ("petitioner") is an immigrant detainee presently held in Moshannon Valley Processing Center ("MVPC"). The Department of Homeland Security ("DHS" and "respondent") seized petitioner in York, Pennsylvania, deemed him an "applicant seeking admission" under 8 U.S.C. § 1225(b)(2)(A), commenced removal proceedings and subjected him to mandatory detention without an individualized bond hearing. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241. Among other things, he contends that his detention under § 1225 is improper and a determination as to release or detention pursuant to § 1226 is required. In other words, he argues he is entitled to an individualized bond hearing. For the following reasons, petitioner's writ will be granted to the extent it seeks such relief.

The court may grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States of America." 28 U.S.C. § 2241(c)(3). "The Supreme Court [has] held that § 2241 confers jurisdiction upon the federal district courts to consider cases challenging the detention of aliens during removal proceedings." <u>Bystron v. Hoover</u>, 456 F. Supp. 3d 635, 640 (M.D. Pa. 2020) (citing <u>Demore v. Kim</u>, 538 U.S. 510 (2003) and <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001)).

The petition sets forth the following factual background.  DHS officials encountered petitioner in York on March 24, 2026.  He stated that he is a Guatemalan national who entered the United States without formal inspection or admission by an immigration official.  DHS officials subsequently arrested petitioner pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lack of valid entry documentation and charged him with removal under 8 U.S.C. § 1182(a)(6)(A)(i).

After his arrest, petitioner told law enforcement that he had entered the United States approximately twenty years earlier at a location which he could not recall.  DHS officials then transported petitioner to MVPC where he currently remains.

Petitioner contends that respondent has mischaracterized him as "an applicant seeking admission" under § 1225.  Instead, he maintains that because he entered the United States nearly two decades ago, has no criminal record and has long resided in the interior, § 1226 controls.  In support, he relies on a growing consensus of judicial opinions rejecting respondent's position that all aliens present without being admitted are subject to mandatory detention under § 1225.  And in this regard petitioner relies on the Supreme Court's recognition that mandatory detention under § 1225 generally applies only to aliens entering at the border or apprehended within close, temporal proximity thereto.  But petitioner cannot properly be characterized as seeking admission under § 1225; instead, under long-standing interpretation and practice the government's ability to detain him assertedly is governed by the individualized assessment recognized in § 1226.

Respondent maintains that petitioner properly is classified as an applicant seeking admission under § 1225.  From its perspective, any detainee who entered the country without an immigration official's approval is "seeking admission."  It purportedly is immaterial whether the alien has been apprehended in the interior of the country or lived in the country for a significant period of time.  Simply by virtue of never having been admitted by an immigration official,

respondent asserts that an alien actively is seeking admission until he or she is granted admission by an immigration official.

Given this backdrop, our central inquiry is whether an alien who is apprehended in the nation's interior after living there for a period of time actively is seeking admission under § 1225. We conclude that such an alien is not within the reach of that phase as used in the statute and that Congress authorized the detention or release of such individuals pursuant to an individualized assessment after a bond hearing under § 1226.  This assessment is supported by the statutory text, the Supreme Court's teachings and guidance in the area, the protections of the Due Process Clause to those who have an established presence in the country, the last thirty years of executive and agency enforcement practices and the consensus of the judges in this District.

An overwhelming number of courts that have considered the matter have concluded that the plain text of the statutes brought into play by respondent's position actually supports petitioner's position.  These courts have reasoned that the statutory scheme draws distinctions between those aliens who enter at a point of entry or are apprehended shortly after crossing the border and those who are found in the interior of the county after a meaningful passage of time. The primary source for recognizing this dichotomy is the plain text of the statutes in question.

Section 1225 states in relevant part: "An alien present in the United States who has not been admitted or who arrives in the United States. . . shall be deemed for purposes of this chapter an applicant for admission. . . [I]f the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]"

Section 1226 states in relevant part: "[A]n alien may be arrested and detained pending a decision on whether alien is to be removed from the United States.  Except as provided in

subsection (c) and pending such decision, the Attorney General. . . may release the alien on bond. . . or conditional parole."

Respondent proffers recent decisions by the United States Ciurts of Appeals for the Fifth and Eighth Circuits which hold an alien lacking admission by an immigration official necessarily is "seeking admission" regardless of the individual circumstances underlying his or her presence in the United States.  Interpreting § 1225 in this way, the Fifth Circuit found "the everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"  Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498, 502-04 (5th Cir. 2026).  Under this interpretation, the two terms are coterminous.  In other words, an alien must be seeking admission if he or she has never been admitted.

The Eighth Circuit followed suit: "we agree with the Fifth Circuit that the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same."  Avila v. Bondi, 170 F.4th 1128, 1134 (8th Cir. 2026).  The majority members of the panel further reasoned that the Supreme Court's teachings in Jennings v. Rodriguez , 583 U.S. 281, 287 (2018), did "not preclude the application of Section 1225 to aliens arrested in the interior. . . . While Jennings states that Section 1226 generally authorizes the Government to detain 'certain aliens already in the country,' id., this does not preclude other statutory provisions—such as Section 1225(b)(2)(A)—from also applying to such aliens."  Avila, 170 F.4th at 1128.

In contrast, the vast majority of district courts and more recently the United States Court of Appeals for the Second Circuit have concluded that § 1225(b)(2)(A) applies only to an "applicant for admission" who also is "seeking admission," and an alien who has been apprehended in the interior of the country long after entry and is awaiting adjustment of status based on a petition for cancellation of removal proceedings cannot be said to be "seeking admission."  As a result, such an alien is not subject to mandatory detention under §

4

1225(B)(2)(A), but instead is to be considered for bond pursuant to an individualized inquiry

under the discretionary authority reflected in § 1226.  We agree.

In a thorough and well-reasoned opinion, the Second Circuit opined:

Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider [the government's position that mandatory detention under § 1225(b)(2)(A) applies] and conclude that the government's novel interpretation of the immigration statutes defies their plain text.  That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner.  Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.

This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose.  It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226.  It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.  Finally, even if the government's newfound interpretation of Section 1225(b)(2)(A) were plausible—and it is not—we would nonetheless reject it based on our obligation to construe these statutes in a manner that would avoid the serious constitutional questions attendant to what would be the broadest mass-detention-without-bond mandate in our Nation's history for millions of noncitizens.

Barbosa da Cunha v. Freden,  -- F.4th --, 2026 WL 1146044, *2 (2d Cir. April 28, 2026).

In joining the decisions of over 370 judges nationwide,[1] the Second Circuit decisively

departed from the Fifth and Eighth Circuits' statutory interpretations stating:

the government's proposed statutory construction suffers from a fatal defect: it disregards the second requirement for this provision to apply, Section 1225(b)(2)(A) applies 'in the case of an alien who is an applicant for admission' and provides for detention of 'an alien seeking admission.'  It therefore only applies to a noncitizen who is both 'an applicant for admission' and who is 'seeking admission.'  Petitioner may be an 'applicant for admission,' but he is not 'seeking admission.'

---

[1] As of February 12, 2026, 373 district court judges had agreed that the Section 1226 applies. See POLITICO Feb. 12, 2026 https://www.politico.com/news/2026/02/12/donald-trump-judges-mandatory-detention-rulings-00778256.

Id. at * 5.  The statutory definitions of "applicant for admission" and "admission" and the ordinary understanding of the term "seeking" confirm that "Section 1225(b)(2) therefore applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization."  Id. at * 6.

Further, adoption of the government's position that an "applicant for admission" is a mere subset of the class of aliens "seeking admission" would render Congress' use of the latter term in § 1225(b) superfluous.  Had that been the intent of Congress, it could have achieved this result by omitting the term "seeking admission" altogether.  Id. at * 8.  But it chose to use both terms in that section of the statute and in doing so authorized ""bond for noncitizens who fit into only one category but mandate detention for noncitizens who fit into both."  Id. at * 9.  This "commonsense reading of the text in Section 1225(b)(2)(A) squares with the plain meaning of 'seeking admission' and gives effect to each clause and word that Congress chose to write."  Id.

Understanding the text used in Sections 1225(b) and 1226 as drawing a distinction between applicants for admission and applicants seeking admission is the correct approach because the Supreme Court has told us that it is.  In considering whether due process places constraints on the duration of detention under §§ 1225(b)(1) and (b)(2), the Court in Jennings v. Rodriguez, 583 U.S. 281, 287 (2018), outlined the nature and scope of detention for "applicants for admission" as mandated in 1225 and contrasted the statutory directives governing that detention with the detention of aliens already in the county pending removal proceedings under §§ 1226(a) & (c).  The Court considered "[t]he primary issue [as] the proper interpretation of §§ 1225(b), 1226(a), and 1226(c)."  Id. at 289.

In resolving whether Congress placed limitations on those individuals detained under § 1225(b), the Court observed that in deciding "(1) who may enter the country and (2) who may stay here after entering," the Court explained that as to "applicants for admission" the decision-

6

making pursuant to § 1225 "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." Id. at 287.  In contrast, §§ 1226(a) and (c) govern the detention of certain groups of aliens "already in the country" pending the outcome of removal proceedings. Id. at 289.

The Court ultimately held that "§§ 1225(b) and 1226(c) authorize detention until the end of applicable proceedings." Id. at 296.  As to those aliens who are subject to detention under § 1226(a), "[a]s long as the detained alien is not covered by § 1226(c), the Attorney General 'may release' the alien on 'bond ... or conditional parole.' § 1226(a).  [And] Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)." Jennings, 583 U.S. at 306.

As the Second Circuit aptly observed:

the framework set forth in Jennings makes good sense in light of Congress' overall approach to immigration detention.  The statute creates a tiered scheme that makes detention and removal easier for noncitizens who have weaker legal claims and who are either particularly dangerous or about whom the government lacks information.  Noncitizens who just arrived without documentation or who misrepresented themselves are subject to expedited removal and must be detained.  8 U.S.C. § 1225(b)(1)(A)(i).  Noncitizens who snuck across the border less than two years ago may be treated the same way, but only if so designated by the Attorney General.  Id. § 1225(b)(1)(A)(iii).  Noncitizens who present themselves to immigration officials at the border but are likely inadmissible for reasons other than a lack of documentation or misrepresentation must be detained, but they get full (not expedited) removal proceedings.  Id. § 1225(b)(2)(A).  Finally, noncitizens who have been in the United States for more than two years get full removal proceedings, may be detained, and may be granted release on bond or conditional parole, id. § 1226(a), unless they have committed certain crimes, id. § 1226(c).  Only that construction reads the detention and removal provisions as a "symmetrical and coherent" statutory scheme that fits "all parts into an harmonious whole." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L.Ed.2d 121 (2000) (internal quotation marks and citation omitted).

Barbosa da Cunha, 175 F.4th at 85.  Jennings thus supports the tiered approach to detention that Congress mandated and that petitioner advances.

In contrast, the government's position would eliminate this tiered approach and run afoul of the longstanding recognition that once an alien has been present in the United States for a

7

substantial period of time, such an alien is entitled to more protections under the Due Process Clause.  Id. at 86.  In rejecting the argument that the government's position is supported by the "legal fiction" doctrine (which permits the government to treat an alien as still on the threshold) and its argument that the doctrine should apply regardless of the duration of time the alien has been present, the Second Circuit observed: "[u]nder settled Supreme Court precedent, 'aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."  Id. (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (emphasis added by the Second Circuit)).  "That is, 'once an alien enters the country, the legal circumstance changes, . . . whether their presence here is lawful, unlawful, temporary, or permanent."  Id. (quoting Zadvydas, 533 U.S. at 693).  The government's interpretation of § 1225 "runs afoul of these fundamental principles."  Id.

Additional aspects of the context and structure of §§ 1225 and 1226 undermine the government's position.  The government's position reduces the reach of § 1226(a) to a narrow subset of applicants for admission, such as the detention of aliens who have overstayed their visas.  But Congress chose to craft § 1226(a) more broadly, using the phrase "an alien," and reading it with the limitations the government's position would create is akin to ignoring the boundaries Congress drew in deciding the scope of its reach.  Id. at 86-87.

Similarly, the government's position renders much of § 1226(c) superfluous.  If its position were given effect, there would have been no need for the recent amendments through the Laken Riley Act, which eliminated the previously existing discretion under § 1226(a) with regard to aliens who have "committed a crime involving moral turpitude, 8 U.S.C. § 1226(c)(1)(A), or having engaged in terrorist activity, id. § 1226(c)(1)(D)."  Id. at 87.  But Congress recognized the need to reduce some of the discretion given the Secretary under §

1226(a) by removing certain categories of criminal offenders from the due process that § 1226(a) otherwise affords.  Id.  And reading § 1225(b)(2) as treating all applicants for admission as also seeking admission and outside the scope of § 1226(a) would render other sections of the statutory scheme unnecessary and meaningless and thus run afoul of the cannon against reading a provision in a manner rendering other parts of the statute pointless.  Id.  (citing Marx v. Gen. Revenue Corp., 568 U.S. 371, 386 (2013) (the cannon against reading one provision of a statue to nullify another is at its strongest when the "interpretation would render superfluous another part of the same statutory scheme") and Henderson v. United States, 568 U.S. 266, 281 (2013) (Scalia, J., dissenting) ("A rudimentary principle of textual interpretation - so commonsensical that it scarcely needs citation - is that if one interpretation of an ambiguous provision causes it to serve a purpose consistent with the entire text, and the other interpretation renders it pointless, the former prevails.")).

The past executive understanding and agency practices in the area likewise support petitioner's position.  Five Presidential administrations consistently interpreted the provisions in question as drawing distinctions between aliens seeking to enter at the borders and those apprehended under circumstances temporally related thereto, and those who have more of a mooring to the nation and roots in their local communities.  Id. at 91.  Such a long lack of recognizing the newly claimed authority "is strong evidence that it does not exist."  Id. at 92 (quoting Learning Res., Inc. v. Trump, ―― U.S. ――, 146 S. Ct. 628, 643 (2026); and Learning Res., Inc., 146 S. Ct. at 641 (plurality opinion) ("explaining that the 'breadth of authority' the government claims, coupled with its 'lack of historical precedent,' 'is a telling indication that the claimed power 'extend[s] beyond the President's legitimate reach'") (internal quotation marks and citation omitted)).  This is particularly telling here, given that agencies have strong incentive to maximize their own power and discretion.  Id. (citing Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.,

Occupational Safety & Health Admin., 595 U.S. 109, 119 (2022)).  So when an agency has long failed to reach for a power and only changes its mind after many years, the complacency pursuant to a settled practice provides "persuasive evidence that the power was never conferred in the first place."  Id. at 92-93 (citing Nat'l Fed'n of Indep. Bus., 595 U.S. at 119).

Also, in the many amendments that occurred to the Illegal Immigrant Reform and Immigrant Responsibility Act over these nearly thirty years, Congress never sought to correct or modified what had become the settled interpretation and agency practice.  Id.  And by subjecting only a small subset of criminal noncitizens to mandatory detention in the Laken Riley Act, Congress effectively blessed the established practice of considering all others for bond pursuant to an individualized basis.  Id.  "As with agency practice, 'Congress' failure to repeal or revise the statute in the face of such administrative interpretation is persuasive evidence that that interpretation is the one intended by Congress."  Id. (quoting CBS, Inc. v. FCC, 453 U.S. 367, 385 (1981) (alterations adopted) (internal quotation marks and citation omitted) and citing United States v. Chestman, 947 F.2d 551, 560 (2d Cir. 1991) (*en banc*) ("Congressional silence in the face of administrative construction of a statute lends support to the validity of that interpretation.").  So the past executive and agency practice coupled with the lack of Congressional measures designed to correct that practice, despite multiple opportunities to do so, favors an interpretation that § 1225(b)(2) does not mandate detention for every applicant for admission regardless of individual circumstances placing them within the scope of § 1226(a).

And assuming a plain text analysis were to somehow fall short of answering the question at hand, crediting the government's interpretation would run the risk of creating constitutional challenges to the entire legislative scheme.  "Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those

10

problems." <u>Barbosa da Cunha</u>, 175 F.4th at 93 (quoting <u>Jennings</u>, 583 U.S. at 286). "Importantly, '[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction,' and, otherwise, it 'simply has no application.'" <u>Id.</u> (quoting <u>Jennings</u>, 583 U.S. at 296).  As emphasized above, petitioner's reading of "alien seeking admission" is the correct interpretation of Section 1225(b)(2)(A)'s plain text and therefore the doctrine of constitutional avoidance has no immediate application.

But even assuming for the sake of argument that the government's position is a plausible one, the doctrine of constitutional avoidance would render it the least appropriate choice.  The Supreme Court has long recognized that individuals such as petitioner are protected by the Fifth Amendment's Due Process Clause.  <u>Zadvydas</u>, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").  This is because

> once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.  <u>See</u> <u>Plyler v. Doe</u>, 457 U.S. 202, 210, 102 S. Ct. 2382, 72 L.Ed.2d 786 (1982); <u>Mathews v. Diaz</u>, 426 U.S. 67, 77, 96 S. Ct. 1883, 48 L.Ed.2d 478 (1976); <u>Kwong Hai Chew v. Colding</u>, 344 U.S. 590, 596–598, and n. 5, 73 S. Ct. 472, 97 L. Ed. 576 (1953); <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 369, 6 S .Ct. 1064, 30 L.Ed. 220 (1886); <u>cf.</u> <u>Mezei</u>, <u>supra</u>, at 212, 73 S. Ct. 625 ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law").  Indeed, this Court has held that the Due Process Clause protects an alien subject to a final order of deportation, <u>see</u> <u>Wong Wing v. United States</u>, 163 U.S. 228, 238, 16 S. Ct. 977, 41 L. Ed. 140 (1896), though the nature of that protection may vary depending upon status and circumstance, <u>see</u> <u>Landon v. Plasencia</u>, 459 U.S. 21, 32–34, 103 S. Ct. 321, 74 L.Ed.2d 21 (1982); <u>Johnson</u>, <u>supra</u>, at 770, 70 S. Ct. 936.

<u>Zadvydas</u>, 533 U.S. at 693-94.  And while Congress has the authority to direct the detention of aliens during the removal process, it has not granted the Attorney General the authority to hold such individuals in indefinite confinement.  <u>Id.</u> at 696-97.

Here, petitioner was arrested and detained as of March 24, 2026.  He was charged with removal proceedings through the issuance of a notice to appear.  The record lacks any additional details about the immediacy of those proceedings.  Adopting the government's position would raise serious concerns regarding the potential unconstitutional infringement of petitioner's established liberty interests.

Finally, all of the judges in this district to consider the matter have likewise rejected the respondent's reading of § 1225(b)(2) and adopted a statutory interpretation consistent with the one set forth above.  See Calzado Diaz v. Noem, No. 3:25-cv-458, 2025 WL 3628480 (W.D. Pa. Dec. 15, 2025) (Haines, J.) (rejecting government's novel interpretation of § 1225(a) and holding that "based on the Supreme Court's language in Jennings and the wording of §§ 1225 and 1226, the Court finds that § 1225 is tethered more closely to the border and § 1226 applies more readily to the interior of the country"), vacated as moot, Dkt. No. 22 (W.D. Pa. Dec. 17, 2025) (emphasizing that the legal conclusions in the original opinion remain unchanged); Padilla Ventura v. Rose, No. 3:26-cv-65, Dkt No. 13 (W.D. Pa. Feb. 3, 2026) (Wiegand, J.) ("Petitioner asserts that he is subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) and not mandatory detention under § 1225(b)(2) and, therefore, that he is entitled to a bond hearing.  The Court agrees.  Section 1226 applies to aliens who are "already present in the United States[,]" Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), while the mandatory detention provision of § 1225 governs detention of "applicants for admission" to the United States.  Bethancourt Soto v. Soto, No. 25-CV-16200, 2025 WL 2976572, at *2 (D.N.J. Oct. 22, 2025).  The Court joins the overwhelming majority of district courts in holding that § 1226(a), rather than the mandatory detention provision of § 1225(b), applies to aliens similarly situated to Petitioner, who are not seeking admission at a port of entry but rather are already present in the country.); Aguirre-Guevara v. Oddo, No. 3:26-cv-70 Dkt. No. 9 (W.D. Pa. Feb. 11, 2026 (Stickman, J.) (same);

Juarez Villagrez v. Noem, No. 3:26-cv-72, 2026 WL 545380 (W.D. Pa. Feb. 26, 2026) (Ranjan, J.) ("Interpreting Section 1225(b)(2) to not apply to aliens already present in the country, and accused of no other crimes, avoids serious constitutional questions related to due process. The Court avoids those questions by adopting Petitioner's and the majority's view."); Sidahmed Ewah v. Oddo et. al., 2026 WL 1077694 at *1 (W.D. Pa. Apr. 21, 2026) (Conti, J.) ("[T]he Third Circuit has not addressed this issue. The court joins the other judges in this district court in holding that § 1226(a), rather than the mandatory detention provision of § 1225(b), applies to aliens similarly situated to Petitioner, who are not seeking admission at a port of entry but rather are already present in the country.").

The undisputed facts of record demonstrate that petitioner is subject to detention under the sound exercise of the Secretary's discretion pursuant to § 1226(a) and entitled to an individualized bond hearing in conjunction therewith. DHS detained petitioner in York, Pennsylvania. Central Pennsylvania is indisputably not a border, port or place of entry.

Furthermore, petitioner entered the country approximately twenty years ago. Twenty years extends well beyond the temporal proximity contemplated by § 1225 when defining "seeking admission." See, e.g., Zumba v. Bondi, 2025 WL 2753496 at *6 (D.N.J. Sept. 26, 2025) ("the Court finds the structure of § 1225(b)(2) further indicates that it authorizes mandatory detention for noncitizens entering, attempting to enter, or *who have recently entered* the U.S., and *does not* encompass [aliens] who entered long ago . . . and have been residing in the U.S. for years.") (quoting Maldonado Vasquez v. Feeley, 2025 WL 2676082, at *13 (D. N.V. Sept. 17, 2025) (emphasis added)). These undisputed facts place petitioner squarely within § 1226(a)'s discretionary scheme.

The distinctions between an alien who has effectuated an entry into the United States and one who never has runs throughout immigration law. Zadvydas, 533 U.S. at 693. And once

13

such individuals have entered the country, the Due Process Clause provides various levels of protection, regardless of whether their entry and "presence here is lawful, unlawful, temporary, or permanent." Id. It is this temporal concept that delineates between those who are subject to § 1225 and those whose detention is governed by § 1226. Aliens, like petitioner, who are "already present in the United States," are not subject to § 1225 detention because they cannot be said to be "seeking admission" as Congress used that term. And the constitutional avoidance doctrine eliminates any inkling of doubt as to the accuracy of this interpretation.

For the foregoing reasons, the court will grant petitioner's writ of habeas corpus in part and order the respondent to provide an individualized bond hearing that satisfies the fundamental requirements of due process. Appropriate orders will follow.

Date: June 8, 2026

s/ David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Brendan T. Conway, AUSA
        John H. Peng, Esquire

        (*Via CM/ECF Electronic Mail*)